# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| LEE DEFALICO, Individually and on Behalf of All Others Similarly Situated, | Case No.: 17-cv-1303 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| EVERGREEN PROFESSIONAL RECOVERIES, INC. and GUARDIAN CREDIT UNION, | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Lee DeFalico is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff, debts allegedly incurred for personal, family or household purposes, namely purchases of home goods.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt arose from consumer credit transactions.

6. Defendant Evergreen Professional Recoveries, Inc. ("Evergreen") is a corporation with its principal place of business located at 12100 NE 195th Street #125, Bothell, WA 98011.

7. Evergreen is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Evergreen is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Evergreen is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

9. Guardian Credit Union ("Guardian") is a credit union with its primary place of business at 11220 W. Oklahoma Ave., West Allis, WI 53227.

10. Guardian issues loans to consumers to finance vehicle purchases and other consumer credit transactions. https://www.guardiancu.org/personal/auto-loans.

11. On its face, Wis. Stat. § 427.103(3) applies both to creditors collecting on their own behalf and to creditors who hire other debt collectors to collect on the creditor's behalf.

12. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

13. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

2

14. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

15. The Wisconsin Department of Financial Institutions, which has been tasked with administering the Wisconsin Consumer Act since it was passed in 1971, *see* Wis. Stat. §§ 421.301(2) and 426.103, interprets Wis. Stat. § 427.103(2) to mean that:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of 'debt collector' under the federal Fair Debt Collection Practices Act. . . . Compliance with Wisconsin law does not ensure compliance with the federal law and vice versa.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

16. Guardian is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

17. Guardian uses third party debt collection agencies, including Evergreen, to collect consumer debts. Guardian, directly or indirectly, is a debt collector under this arrangement. Wis. Stat. § 427.103(3).

18. A company meeting the definition of a "debt collector" (here, Guardian) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

### THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 ET SEQ.

3

19. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

20. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

21. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

4

22. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

23. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of

5

which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

24. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

25. The FDCPA prohibits debt collectors from contacting third parties and disclosing the existence of a debt. 15 U.S.C. § 1692c(b) states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

26. 15 U.S.C. § 1692b allows a debt collector to communicate with third parties for the purpose of determining the consumer's location or employment. However, the debt collector must "not state that such consumer owes any debt." 15 U.S.C. § 1692b(2).

27. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

6

28. 15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

29. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

30. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

31. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

32. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

33. 15 U.S.C. § 1692g(a) states:

> a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

7

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

### THE WISCONSIN CONSUMER ACT, CH. 421-427 WIS. STATS.

34. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

35. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

36. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

37. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

38. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

39. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

8

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

40. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

41. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

42. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

43. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## **FACTS**

44. Sometime prior to January 1, 2016, Plaintiff entered into a consumer credit transaction with Guardian to finance the purchase of a vehicle ("Plaintiff's Auto Loan").

45. Plaintiff's Auto Loan was made to purchase a 2005 Pontiac Grand Prix (the "Pontiac") that was to be used for personal, family, or household purposes. Plaintiff did not purchase the vehicle to resell it or for any other business purpose.

9

46. On or about March 4, 2016, Plaintiff and Guardian executed an agreement to refinance Plaintiff's Auto Loan.

47. On or about March 31, 2016, Guardian mailed an account statement to Plaintiff regarding his alleged Guardian Credit Union account, showing the present status of Plaintiff's Auto Loan. A copy of the letter is attached to this complaint as Exhibit A.

48. Upon information and belief, Exhibit A is a form account statement, generated by computer, and with the information specific to Plaintiff and Plaintiff's Auto Loan inserted by computer.

49. Exhibit A states:

| Loan: 1 | | 2005 PONTIAC GRAND PRIX-V6 | | | | |
|---|---|---|---|---|---|---|
| Trans. Post | Transaction Description | | Amount | Principal | Fin. Chg. | Balance |
| | Balance Forward | | | | | 6,283.62 |
| Jan 27 | Payments (Late Fee 9.69) ONLINE ACH | | -200.61 | -56.64 | 134.28 | 6,226.98 |
| Feb 23 | Payments (Late Fee 9.69) MBR ONLINE CC PYMT | | -193.88 | -109.34 | 74.85 | 6,117.64 |
| Mar 04 | Payments | | -6,144.88 | -6,117.64 | 27.24 | 0.00 |
| | Acct ███ 263 Ln 0002 Disbursal | Loan Closed | | | | |

Additional Account Information

Joint Owner(s) ADAM A ALLEN
Original Balance 7,000.00
Annual Percentage Rate 16.250%
Daily Periodic Rate .044520%

50. Exhibit A also states the following:

| Loan: 1 - continued | | 2005 PONTIAC GRAND PRIX-V6 | | | | |
|---|---|---|---|---|---|---|
| Trans. Post | Transaction Description | | Amount | Principal | Fin. Chg. | Balance |
| Jan 07 | Ending balance subject to interest rate | | | | | -200.61 |
| | 3 Payment(s) = | | 6,539.37 | | | |
| | **Totals This Period** | | | | | |
| | Total Interest Charged for This Period | | 236.37 | | | |
| | Total Fees Charged for This Period | | 19.38 | | | |
| | **Totals Year to Date** | | | | | |
| | Total Principal Paid in 2016 | | 6,283.62 | | | |
| | Total Interest Charged in 2016 | | 236.37 | | | |
| | Total Fees Charged in 2016 | | 19.38 | | | |
| | Total Late Charges Paid in 2016 | | 19.38 | | | |
| | **2015 Information** | | | | | |
| | Total Principal Paid in 2015 | | 716.38 | | | |
| | Total Interest Charged in 2015 | | 694.62 | | | |
| | Total Fees Charged in 2015 | | 0.00 | | | |

| Loan: 2 | | 2005 PONTIAC GRAND PRIX-V6 | | | | |
|---|---|---|---|---|---|---|
| Trans. Post | Transaction Description | | Amount | Principal | Fin. Chg. | Balance |
| | Balance Forward | | | | | 0.00 |
| Mar 04 | New Loan | | 6,234.93 | 6,234.93 | | 6,234.93 |
| Mar 31 | Loan Advance ST-LIFE/DIS/IU | | 16.65 | 16.65 | | 6,251.58 |
| Mar 31 | Ending balance subject to interest rate | | | | | 6,251.58 |

Payment Information
Next Payment 195.27
Due Date 04/18/16
2 Advance(s) = 6,251.58

**Totals This Period**
Total Interest Charged for This Period 0.00
Total Fees Charged for This Period 16.65

**Totals Year to Date**
Total Principal Paid in 2016 0.00
Total Interest Charged in 2016 0.00
Total Fees Charged in 2016 16.65
Interest Paid 236.37

10

51. As of March 31, 2016, the balance of Plaintiff's Auto Loan was $6,251.58.

52. Sometime between March 31, 2016 and September 30, 2016, Plaintiff defaulted on the scheduled payments under Plaintiff's Auto Loan.

53. Sometime after Plaintiff's Auto Loan was in default, Guardian repossessed the Pontiac.

54. On or about October 3, 2016, Guardian mailed Plaintiff a debt collection letter and Statement of Repossession and Sale of Collateral stating that, on or about September 30, 2016, Guardian sold the Pontiac at a "WISCONSIN STATE AUTO AUCTION." A copy of the debt collection letter and attached Statement of Repossession and Sale of Collateral is attached to this complaint as Exhibit B.

55. Upon information and belief, Exhibit B is a form debt collection letter and Statement of Repossession and Sale of Collateral, generated by computer, and with information specific to Plaintiff, Plaintiff's Auto Loan, and the Pontiac entered by computer.

56. Exhibit B states the following:

> As a result of your default, the vehicle referenced above was recovered and sold. A Statement of Repossession and Sale of Collateral is also attached.
>
> After the proceeds of the funds were applied to the loan, there remains a deficiency balance due.
>
> | | | |
> |---|---|---|
> | **Total Due** | $ | 7,396.40 |
> | **Selling Price** | $ | 700.00 |
> | **Deficiency Balance** | $ | 6,696.40 |

57. Exhibit B also states the following:

11

| | | |
|---|---|---:|
| Principal Amount owed as of Sale Date: | $ | 6,389.16 |
| ADD: Late charges owed at sale | $ | 19.52 |
| Interest Owed at sale | $ | 527.72 |
| Court/legal Costs | $ | 0.00 |
| Repossession Fee | $ | 150.00 |
| Storage Fee | $ | 25.00 |
| Selling Fee | $ | 125.00 |
| Transportation Fee | $ | 60.00 |
| Repo Title | $ | 100.00 |
| Gas/Oil/Battery | $ | 0.00 |
| Postage | $ | 0.00 |
| Keys | $ | 0.00 |
| Total | $ | 7,396.40 |
| LESS: Selling Price | $ | 700.00 |
| Total Deficiency Balance Due | $ | 6,696.40 |

58. Exhibit B states that the Pontiac was sold for $700 and that, because of the balance of Plaintiff's Auto Loan and the costs of resale, Plaintiff still owed Guardian a balance of $6,696.40.

59. On or about April 19, 2017, Evergreen mailed a debt collection letter to Plaintiff regarding an alleged debt Plaintiff owed to "GUARDIAN CREDIT UNION." A copy of this letter is attached to this complaint as Exhibit C.

60. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

61. Exhibit C was the first written communication that Evergreen sent to Plaintiff regarding Plaintiff's "GUARDIAN CREDIT UNION" account.

62. Upon information and belief, the alleged debt Evergreen was attempting to collect with Exhibit C arose from the alleged deficiency balance remaining after Guardian resold the Pontiac and is the same alleged debt stated in Exhibit B.

63. Exhibit C states:

12

**EVERGREEN PROFESSIONAL RECOVERIES**
12100 NE 195th Street, #125 * Bothell, WA 98011
800-241-1305

Re: GUARDIAN CREDIT UNION
Account #: ▉4974
Balance Due: $6389.16

Pay your bill online: **www.everprof.com**

| | | |
|---|---|---|
| PRINCIPAL: | $ | 6389.16 |
| TOTAL: | $ | 6389.16 |

64. <u>Exhibit C</u> states that Plaintiff's balance, as of April 19, 2017, is $6,389.16.

65. <u>Exhibits B and C</u> together are false, misleading and confusing to the unsophisticated consumer.

66. <u>Exhibit B</u> tells Plaintiff that he owes Guardian $6,696.40, but <u>Exhibit C</u>, sent several months later, tells Plaintiff that he owes $6,389.16.

67. Upon information and belief, during the intervening time between October 3, 2016 and April 19, 2017, the balance of Plaintiff's alleged debt allegedly owed to Guardian would have increased as a result of interest, late fees, or other charges.

68. Upon information and belief, even if Plaintiff's alleged debt allegedly owed to Guardian was not subject to interest, late fees, or other charges, the balance of the debt certainly would not have decreased on its own.

69. Plaintiff did not make a payment to, or procure any additional loans from Guardian that could account for the discrepancy.

70. Plaintiff was confused by the different amounts listed on <u>Exhibits B and C</u>, and had no idea why the balance had apparently decreased or whether the letter sent by Evergreen was legitimate.

13

71. The unsophisticated consumer would be confused by the different balances on Exhibits B and C, and about whether one or neither of the stated balances is correct.

72. Plaintiff was confused by Exhibits B and C.

73. Plaintiff had to spend time and money investigating Exhibits B and C and the consequences of any potential responses to Exhibits B and C.

74. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibits B and C.

75. Moreover, upon information and belief, Guardian did not sell the Pontiac in a commercially reasonable manner.

76. Whether collateral that has been repossessed has been sold in a commercially reasonable manner requires a detailed factual inquiry into the method, manner, time, place, purchaser, and other terms, including whether the seller disclaimed or modified warranties. All aspects of the resale must be commercially reasonable. Wis. Stat. § 409.610; *see Vic Hansen & Sons, Inc. v. Crowley*, 203 N.W.2d 728 (Wis. 1973); *Appleton State Bank v. Van Dyke Ford, Inc.*, 279 N.W.2d 443 (1979).

77. According to Exhibit A, Plaintiff paid a total of $716.38 in principal in 2015, leaving a total of $6,283.62 in principal on Plaintiff's Auto Loan. Upon information and belief, Plaintiff purchased the Pontiac for a total of $7,000 in 2015.

78. According to Exhibit B, the Pontiac was resold about a year later for $700, which, upon information and belief, was roughly 10% of the purchase price to Plaintiff.

79. Per a Kelley Blue Book search performed 9/25/2017, approximately one year after the Pontiac was resold, the private party value of a 2005 Pontiac Grand Prix with 140,000

miles and in good condition was $2,786. https://www.kbb.com/pontiac/grand-prix/2005/sedan-4d/?vehicleid=1476&intent=trade-in-sell&mileage=140000&pricetype=private-party&options=6488725|true&condition=good.

80. Upon information and belief, the terms under which Guardian resold the Pontiac were not commercially reasonable.

## COUNT I -- FDCPA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Count I is brought against Defendant Evergreen.

83. Even though Plaintiff did not make any payments or procure any additional loans to refinance the alleged debt allegedly owed to Guardian, the balance stated in Guardian's debt collection letter and Statement of Repossession and Sale of Collateral (Exhibit B) was higher than the balance on Evergreen's debt collection letter (Exhibit C), sent several months later.

84. In Exhibit C, Evergreen attempted to collect an incorrect amount from Plaintiff.

85. Alternatively, regardless of whether the balance stated on Exhibit C is wrong, Evergreen's attempt to collect an amount different from the amount on Exhibit B is confusing to the unsophisticated consumer.

86. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), and 1692e(10).

## COUNT II -- FDCPA

87. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

88. Count II is brought against Defendant Evergreen.

89. Evergreen failed to state the "amount of the debt" in a non-confusing manner.

15

90. The unsophisticated consumer would not understand why the balance stated on Exhibit C would be lower than the balance stated on Exhibit B.

91. Defendant violated 15 U.S.C. §§ 1692f, 1692f(1) and 1692g(a).

## COUNT III -- WCA

92. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

93. Count III is brought against both Defendants.

94. Even though Plaintiff did not make any payments or procure any additional loans to refinance the alleged debt allegedly owed to Guardian, the balance stated in Guardian's debt collection letter and Statement of Repossession and Sale of Collateral (Exhibit B) was higher than the balance on Evergreen's debt collection letter (Exhibit C), sent several months later.

95. Regardless of whether the balance stated on Exhibits B or C are wrong, Guardian's engagement with Evergreen to attempt to collect an amount different from the amount on Exhibit B is confusing to the unsophisticated consumer.

96. Guardian violated Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

## COUNT IV -- WCA

97. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

98. Count IV is brought against Guardian.

99. After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral as long as every aspect of the disposition of collateral, including the method, manner, time, place, and other terms is commercially reasonable. Wis. Stat. § 409.610(2); *Baird Credit Corp. v. Seher*, 2003 U.S. Dist. LEXIS 4921 (N.D. Ill. March 28, 2003)

(under Wisconsin law, "whether BCC exercised its discretion within the standards prescribed in the UCC under the circumstances in this case is a factual issue that cannot be resolved in a motion to dismiss.").

100. Unless every aspect of disposition is commercially reasonable, the secured party is not entitled to a deficiency judgment in the case of default under a consumer transaction. Wis. Stat. § 425.209; *see Shoeder's Auto Center, Inc. v. Teschner*, 479 N.W.2d 203, 204 (Wis. App. 1991) ("it is the merchant's duty to prove as part of its prima facie case that it disposed of the goods in a commercially reasonable manner before it is entitled to recover a deficiency judgment.").

101. Guardian's resale of the Pontiac was not commercially reasonable.

102. Guardian violated Wis. Stat. §§ 409.610 and 425.209.

## CLASS ALLEGATIONS

103. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters in the form of <u>Exhibits B and C</u> to the complaint in this action, (c) which listed different balances on the same account, (d) seeking to collect an alleged debt, (e) incurred for personal, family or household purposes, (f) between September 26, 2016 and September 26, 2017, inclusive, (g) that was not returned by the postal service.

104. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

105. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits B and C</u> violate the FDCPA and WCA.

17

Case 2:17-cv-01303-PP   Filed 09/26/17   Page 17 of 18   Document 1

106. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

107. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

108. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

109. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 26, 2017

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com